UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
IN RE:                                                  :
                                                        :
RS OLD MILL, LLC,                                       :
                                                        :
              Debtor,                                   :
--------------------------------------------------------------x
RS OLD MILL, LLC, and YEHUDA               :      **OPINION AND ORDER**
SALAMON,                                   :
              Appellants,                  :      20 CV 743 (VB)
                                           :
v.                                         :
                                           :
MARIANNE O'TOOLE, Chapter 7 Trustee, and   :
SUFFERN PARTNERS LLC,                      :
              Appellees.                   :
--------------------------------------------------------------x

Briccetti, J.:

On January 24, 2020, RS Old Mill, LLC ("Debtor"), and Yehuda Salamon, Debtor's

principal and 100% owner (together, "appellants"), filed a notice of appeal from the Bankruptcy

Court's January 14, 2020, Order approving the sale of certain real properties to RS Old Mills RD

LLC, nunc pro tunc to September 5, 2017, and approving a stipulation of settlement (the

"Stipulation") between the Chapter 7 Trustee Marianne O'Toole (the "Trustee") and Suffern

Partners LLC ("Suffern," together with the Trustee, "appellees"), signed on August 19, 2019.

(In re RS Old Mill, LLC, No. 17-22218 (Bankr. S.D.N.Y.), Doc. #253).

Now pending are separate motions of the Trustee and Suffern to dismiss the appeal.

(Docs. ##8, 24).

For the following reasons, the motions are GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 158(a).

**BACKGROUND**

The following facts are taken from the notice of appeal (Doc. #1 ("NOA")), which appends the Bankruptcy Court's January 14, 2020, Order and the August 19, 2019, Stipulation, as well as appellees' sworn affidavits (Docs. ##10, 18, 26).[1]

I.    2017 Transfers of the Properties

On February 13, 2017, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code "to protect its right under [a sale] agreement with Novartis Corporation ("Novartis") to purchase a large tract of property in Rockland County and the improvements thereon."  (Doc. #26 ("Grable Decl.") ¶ 3).  Under the sale agreement, Debtor was to purchase several properties (collectively, the "Properties"), from Novartis for $18 million.

Debtor was unable to timely secure financing to purchase the Properties.  Thus, Novartis deemed Debtor in default under the sale agreement and sought forfeiture of Debtor's $2.5 million down payment.  To avoid forfeiture, Debtor and Suffern agreed Debtor would purchase the Properties from Novartis and then undertake a two-part transfer whereby Debtor would transfer the Properties to "RS Old Mills RD LLC," a third-party entity, which would then immediately transfer the Properties to Suffern.  To fund its purchase of the Properties, Suffern secured a $33 million loan from CPIF Lending, LLC ("CPIF").

---

[1]    It is not clear why, or pursuant to which Bankruptcy Code provision or rule, Old Republic National Title Insurance Company and CPIF Lending, LLC, as purportedly "interested parties" filed an affirmation in support of the Trustee's motion to dismiss the appeal.  (Doc. #15). In it, the purported interested parties advance an argument not raised by either appellant in their briefing—that Debtor lacks standing to appeal the Order.  Similarly, Suffern filed a reply in support of the Trustee's motion to dismiss the appeal, in which it expounds on arguments it already raised in its own briefing.  (Doc. #21).  In neither instance did either party seek leave of this Court to make such filings.  Accordingly, the Court disregards both.

By Order dated June 2, 2017, the Bankruptcy Court directed Debtor to determine if it would assume or reject the sale agreement whereby Debtor would purchase the Properties from Novartis for $18 million.

On June 26, 2017, Debtor filed a notice of its intent to assume the sale agreement. By Orders dated July 13 and August 14, 2017, the Bankruptcy Court authorized Debtor's assumption of the sale agreement and directed Debtor and Novartis to close on or before August 17, 2017. (NOA at ECF 8).[2]  However, Debtor did not seek Bankruptcy Court approval of the subsequent transfers of the Properties to RS Old Mills RD LLC and to Suffern.

On September 14, 2017, three deeds were recorded, effecting the following transfers: (i) by deed dated September 1, 2017, transferring title of the Properties from Novartis to Debtor; (ii) by deed dated September 5, 2017, transferring title of the Properties from Debtor to RS Old Mills RD LLC; and (iii) by deed dated September 5, 2017, transferring title to the Properties from RS Old Mills RD LLC to Suffern. On September 6, 2017, a closing on the sale agreement regarding the Properties was completed. Novartis withdrew its demand for forfeiture of Debtor's $2.5 million security deposit. Upon receiving the properties, Suffern began paying carrying costs on the Properties, exceeding $1 million per month.

II.   <u>Debtor Seeks to Undo the Transfers</u>

On March 29, 2019—more than a year and a half after Debtor bought the Properties pursuant to the sale agreement and transferred the Properties to RS Old Mills RD LLC, which then transferred them to Suffern—Debtor commenced an adversary proceeding against Suffern and others seeking to avoid the transfers of the Properties. Debtor argued the sale of the

---

[2]   "ECF _" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

Properties to RS Old Mills RD LLC and then to Suffern should be unwound because the Bankruptcy Court had not approved the two-step transaction. The complaint also alleged that Debtor or Salamon had been promised, but had not received, an equity share in Suffern that was allegedly to be delivered following Suffern's purchase of the Properties. In connection with this adversary proceeding, notices of pendency were docketed against each of the Properties in the Rockland County Clerk's Office.

On April 19, 2019, Suffern filed an emergency motion whereby Suffern moved for the following relief: (i) entry of an order approving the sale of substantially all of Debtor's assets to Suffern, nunc pro tunc to September 1, 2017; (ii) dismissing Debtor's Chapter 11 case, originally filed on February 13, 2017; and (iii) dismissing and/or abstaining as to all claims against Suffern in the adversary proceeding.

By Order dated June 5, 2019, the Bankruptcy Court converted Debtor's Chapter 11 case to one under Chapter 7. Marianne O'Toole was appointed Trustee to investigate Debtor's post-petition activities, including the transactions at issue and outstanding creditor claims against Debtor's estate.

By the Stipulation signed on August 19, 2019, the Trustee and Suffern agreed to resolve their disputes. The Stipulation provided for a cash payment of $2.5 million from Suffern to the Trustee for the payment of allowed claims against Debtor's estate and other administrative expenses. The Stipulation further stated the Trustee would seek court approval of the Stipulation in accordance with Bankruptcy Rule 9019, and of the sale of the Properties from Debtor to RS Old Mills RD LLC nunc pro tunc to September 5, 2017, in accordance with Sections 363(b)(1) and 363(m) of the Bankruptcy Code.

The Stipulation further provided that upon entry of the Bankruptcy Court's Order approving the Stipulation:  (i) Suffern would withdraw with prejudice its emergency motion dated April 19, 2019; (ii) the notices of pendency docketed against each of the Properties would be vacated; and (iii) Debtor's adversary proceeding would be dismissed <u>without</u> prejudice except insofar as the Trustee released and waived <u>with</u> prejudice any claim of Debtor against Suffern with respect to Suffern's title to the Properties.

III.   <u>The Bankruptcy Court Approves the Sale of the Properties to RS Old Mills RD LLC</u>

By motion dated August 20, 2019, the Trustee sought entry of an order approving the Stipulation.  Salamon filed two objections and an affirmation in opposition to the motion.

On October 4, 2019, and January 10, 2020, the Bankruptcy Court held hearings on the Trustee's motion.  At the January 10 hearing, the Bankruptcy Court issued a bench ruling in which it granted the motion and determined the settlement between the Trustee and Suffern as embodied in the Stipulation to be "fair, equitable, and in the best interests of Debtor's estate and its creditors and a proper exercise of the Trustee's judgment."  (NOA at ECF 4).

On January 14, 2020, the Bankruptcy Court entered an Order approving in all respects both the Stipulation between the Trustee and Suffern and the sale of the Properties by Debtor to RS Old Mills RD LLC <u>nunc</u> <u>pro</u> <u>tunc</u> to September 5, 2017.  In other words, the Bankruptcy Court approved only the first part of the two-part transaction implemented after Debtor acquired the Properties from Novartis.  The January 14 Order incorporated within it the transcript of the January 10 hearing and bench ruling.  The January 10 bench ruling and the January 14 Order are the subject of this appeal.

In the January 14 Order, the Bankruptcy Court overruled objections to the Trustee's motion, including those made by Salamon.  The Bankruptcy Court ordered:

RS Old Mills RS LLC is entitled to the protection of section 363(m) of the Bankruptcy Code with respect to the validity of title to the Properties and the transfer of title to the Properties by the Debtor to RS Old Mills RD LCC, which transfer constitutes a good faith purchase for fair value within the meaning of section 363(m) of the Bankruptcy Code; provided, however, nothing herein is intended to establish good faith with respect to any other person or entity, including, but not limited to, Suffern.

(NOA at ECF 5).  The Bankruptcy Court also waived the fourteen-day stay of its Order under Bankruptcy Rule 6004(h) and rendered its Order "effective and enforceable immediately upon entry."  (Id.).

Upon entry of the Bankruptcy Court's Order, Suffern and CPIF's administrative claims for costs and expenses related to the purchase, improvement, and upkeep of the Properties, totaling approximately $72 million, were resolved.

Appellants neither sought nor obtained a stay pending appeal.

## DISCUSSION

I.    Standard of Review

District courts review a bankruptcy court's conclusions of law de novo and its findings of fact for clear error.  In re Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012).

II.   Mootness

Trustee and Suffern argue the appeal should be dismissed as equitably moot.

The Court agrees.

A.    Legal Standard

"Equitable mootness appeals arise in a somewhat different procedural posture [than the typical bankruptcy court appeal]:  in an equitable mootness dismissal, the district court is not reviewing the bankruptcy court at all, but exercising its own discretion in the first instance.  In so doing, the district court may rely on the bankruptcy court's factual findings, unless clearly

erroneous, and if necessary receive additional evidence."  In re Charter Commc'ns, Inc., 691
F.3d at 483.[3]

"The mootness doctrine arises from the constitutional limitation that Article III courts
hear only live cases and controversies."  Allstate Ins. Co. v. Hughes, 174 B.R. 884, 887–88
(S.D.N.Y. 1994) (citing Mills v. Green, 159 U.S. 651, 653 (1895)).  "Thus, if a court cannot
fashion effective relief, it must dismiss an action as moot."  Id. at 888 (citing Lewis v. Cont'l
Bank Corp., 494 U.S. 472, 477–78 (1990)).

Even when a bankruptcy appeal is not constitutionally moot, it should be dismissed as
equitably moot when, "even though effective relief could conceivably be fashioned,
implementation of that relief would be inequitable."  In re Metromedia Fiber Network, Inc., 416
F.3d 136, 143 (2d Cir. 2005) (quoting In re Chateaugay Corp., 988 F.2d 322, 325 (2d Cir. 1993)
("Chateaugay I")); see also In re 1515 Broadway Ass'n, 153 B.R. 400, 405 (S.D.N.Y. 1992) ("In
the bankruptcy context, these equitable principles retain an important role, and the case may be
moot in situations where the court has jurisdiction under Article III but reversing on appeal
would destroy the work of the bankruptcy court.").  "Unlike constitutional mootness, which turns
on the threshold question of whether a justiciable case or controversy exists, equitable mootness
in the context presented here is concerned with whether a particular remedy can be granted
without unjustly upsetting a debtor's plan of reorganization."  In re Charter Commc'ns, Inc., 691
F.3d at 481.

Equitable mootness is a prudential doctrine that takes into account public policy goals,
including finality, inherent in bankruptcy court decisions.  See Kassover v. Gibson, 2003 WL

---

[3]      Unless otherwise indicated, case quotations omit all internal citations, quotations,
footnotes, and alterations.

21222341, at *1 (S.D.N.Y. May 27, 2003), aff'd sub nom. In re Kassover, 98 F. App'x 30 (2d Cir. 2004) (summary order).  Courts have imported the equitable mootness doctrine from its origin in Chapter 11 to cases under other Chapters of the Bankruptcy Code, including Chapter 7. See, e.g., In re Leatherstocking Antiques, Inc., 2013 WL 5423995, at *4 (S.D.N.Y. Sept. 27, 2013) ("The doctrine of equitable mootness applies to appeals of sale orders as well as appeals from orders confirming plans of reorganization.").

In the Second Circuit, an appeal is scrutinized for mootness in two situations:  when an unstayed order has resulted in a "comprehensive change in circumstances," Chateaugay I, 988 F.2d at 325, and when a reorganization is "substantially consummated," In re Chateaugay Corp., 10 F.3d 944, 952 (2d Cir. 1993) ("Chateaugay II").

As to the first situation, a dismissal based on equitable mootness "is appropriate when the appellant has made no effort to obtain a stay and has permitted such a comprehensive change of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal."  Chateaugay I, 988 F.2d at 325.  "[T]he test for determining whether an unstayed order has resulted in a 'comprehensive change in circumstances' has not been expressly defined by the Second Circuit."  In re Fletcher Int'l, Ltd., 2016 WL 354292, at *3 (S.D.N.Y. Jan. 4, 2016). Instead, courts analyze whether a comprehensive change in circumstances has occurred on a case-by-case basis.  See Allstate Ins. Co. v. Hughes, 174 B.R. at 889.

As to the second situation, a bankruptcy appeal is presumed equitably moot when a debtor's reorganization plan has been substantially consummated.  In re Charter Commc'ns, Inc., 691 F.3d at 482.  "Substantial consummation," as defined by Section 1101(2) of the Bankruptcy Code, requires:

> "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan

8

of the business or of the management of all or substantially all of the property dealt with by the plan"; and, finally, "(C) commencement of distribution under the plan."

11 U.S.C. § 1101(2).

There is a "strong presumption" that an appeal of an unstayed order is moot. See <u>Allstate Ins. Co. v. Hughes</u>, 174 B.R. at 889. This presumption may only be overcome when <u>each</u> of the following five circumstances are present:

(a) the court can still order some effective relief;

(b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;

(c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;

(d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and

(e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

<u>Chateaugay II</u>, 10 F.3d at 952–53. "The <u>Chateaugay</u> [II] factors ensure that there is no <u>per se</u> equitable mootness by requiring a court to examine the actual effects of the requested relief." <u>In re Charter Commc'ns, Inc.</u>, 691 F.3d at 482. Appellants have the burden to show each <u>Chateaugay II</u> factor has been met. <u>Id</u>. at 485. Courts have considered the equitable considerations enunciated in <u>Chateaugay II</u> under the substantial consummation standard to be instructive to the comprehensive change in circumstances standard. See <u>e.g.</u>, <u>Allstate Ins. Co. v. Hughes</u>, 174 B.R. at 889.

Requesting a stay is particularly important because "[i]n the absence of any request for a stay, the question is not solely whether we <u>can</u> provide relief without unraveling the Plan, but also whether we <u>should</u> provide such relief in light of fairness concerns." <u>In re Metromedia</u>

Fiber Network, Inc., 416 F.3d at 144.  "The party who appeals without seeking to avail himself of that protection does so at his own risk."  Chateaugay I, 988 F.2d at 326.

B.    Application

Here, the Court concludes there has been a "comprehensive change in circumstances" since Debtor bought the Properties from Novartis on September 1, 2017.  Chateaugay I, 988 F.2d at 325.  Just four days after Debtor bought the Properties from Novartis, Debtor transferred the Properties to RS Old Mills RD LLC.  That same day, RS Old Mills RD LLC transferred the Properties to Suffern, which purchased the Properties with a $33 million loan from CPIF.  This transaction was designed to avoid forfeiture of Debtor's $2.5 million security deposit on the Properties.  Upon completion of the transaction, Suffern began to pay carrying costs on the Properties, exceeding $1 million per month, and, along with CPIF, accrued administrative claims for costs and expenses related to the purchase, improvement, and upkeep of the Properties, totaling approximately $72 million.  More than a year and a half later, Debtor commenced the adversary proceeding against Suffern that led to the Trustee's appointment, the Stipulation between Trustee and Suffern, and the entry of the Bankruptcy Court Order approving the sale of the Properties to RS Old Mills RD LLC nunc pro tunc to September 5, 2017.

Because the Court concludes there has been a comprehensive change in circumstances, appellants have the burden to show each Chateaugay II factor exists to avoid dismissal of the appeal pursuant to the equitable mootness doctrine.  The Court concludes appellants have not met this burden.

First, and most importantly, the Court analyzes the last of the five Chateaugay II factors, which required appellants to pursue "with diligence" a stay of the execution of the Bankruptcy Court Order.  Chateaugay II, 10 F.3d at 953.  Appellants fail to meet this requirement because

they never requested a stay.  Because appellants need to show the presence of all five factors, the appeal can be dismissed on this basis alone.  See In re Metromedia Fiber, 416 F.3d at 144–45 (relying on a failure to seek a stay of the confirmation order and a failure to seek expedited review of the order to uphold the district court's finding of equitable mootness).

Even if appellants had sought a stay of the underlying order, they have failed to show the remaining Chateaugay II factors are met.  As to the first factor, where a sale of properties has already closed, courts have found they cannot "fashion effective relief."  See In re Leatherstocking Antiques, Inc., 2013 WL 5423995, at *5; see also Bartel v. Bar Harbor Airways, Inc., 196 B.R. 268, 272 (S.D.N.Y.1996) (finding inability to provide effective relief where "asset sales are completed and the proceeds already distributed").

The third Chateaugay II factor is also not met.  As the Bankruptcy Court observed in its January 10, 2020, bench ruling, "[T]o unwind the transaction and not approve the settlement would jeopardize over $400,000 of allowed claims . . . create additional administrative expenses, . . . [and] create additional litigation all for the benefit of someone [Salamon] who really has not challenged the [RS Old Mills RD LLC] sale itself[.]   [It] would be inequitable."  (January 10, 2020, Hearing Transcript at 78, In re RS Old Mill, LLC, No. 17-22218, Doc. #263).  To now reverse the Bankruptcy Court Order would be to "unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court."  Chateaugay II, 10 F.3d at 953.

Finally, appellants make no showing as to the fourth Chateaugay II factor, that the other affected parties "have notice of the appeal and an opportunity to participate in the proceedings."

Chateaugay II, 10 F.3d at 953.  Appellants have not joined any of Debtor's creditors, who too would be adversely affected by a reversal of the Bankruptcy Court Order.[4]

The Court is not persuaded by appellants' proposition that the "comprehensive change in circumstances" be measured from the entry of the Bankruptcy Court Order.  The Bankruptcy Court Order approved a transaction nunc pro tunc that took place in 2017; more than two and a half years have passed since then, and actions by various parties have been taken with respect to the Properties.  And although appellants complain Suffern did not seek Bankruptcy Court approval for the 2017 sale of the Properties to RS Old Mills RD LLC and then to Suffern, the fact of the matter is that appellants also did not seek the approval of the Bankruptcy Court in 2017 even though it was they that had commenced the Chapter 11 proceeding.  Appellants cannot now undo this decision.[5]

Appellants' argument that "effective relief can absolutely be granted to the Appellant[s]—an Order can be issued reversing the Bankruptcy Court's nunc pro tunc approval of a fraudulent sale, which would force Suffern to return the property to the Appellant[s]" is also unavailing.  (Doc. #20 at ECF 15).  The Court "cannot rely" on "debtor's conclusory predictions or opinions" but must conduct "an analytical inquiry into the likely effects of the relief an appellant seeks."  In re Charter Commc'ns, Inc., 691 F.3d at 482.  This is especially true here, because appellants' characterization oversimplifies the issue.  Reversal of the Bankruptcy Court

---

[4]     The second Chateaugay II factor—whether such relief will "affect the re-emergence of the debtor as a revitalized corporate entity"—is inapplicable because the underlying action concerns the sale of real properties and not Debtor's re-emergence as a new corporate entity.

[5]     Moreover, appellants waited a year and a half to file the adversary proceeding in which they complain of the transfers.  Although the Court does not reach any conclusion on the issue, the record suggests appellants now protest the September 2017 transactions because Salamon did not receive an equity interest in Suffern.  (See January 10, 2020, Hearing Transcript at 79, In re RS Old Mill, LLC, No. 17-22218, Doc. #263).

Order would not force Suffern to return the Properties to Debtor because reversal could only undo the sale and transfer of the Properties from Debtor to RS Old Mills RD LLC—it would <u>not</u> undo the subsequent conveyance of the Properties from RS Old Mills RD LLC to Suffern.

In sum, the Court concludes that because appellants are unable to satisfy each of the <u>Chateaugay II</u> factors, appellants are unable to overcome the "strong presumption" that the appeal of the unstayed Bankruptcy Court Order is equitably moot.  <u>See</u> <u>Allstate Ins. Co. v. Hughes</u>, 174 B.R. at 889.

III.     <u>Failure to Timely Designate a Record and Statement of Issues</u>

Because the Court concludes the equitable mootness doctrine requires dismissal of this appeal, it need not, and does not, reach appellees' alternative argument that the appeal should be dismissed due to appellants' failure to timely file a designation of the items to be included in the record on appeal and a statement of the issues on appeal.

## CONCLUSION

The motions to dismiss the appeal are GRANTED.

The Clerk is instructed to terminate the motions (Docs. ##8, 24) and close this case.

Dated: May 8, 2020
         White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge